Jeffrey P. STEWART, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–8712–CR–1145.

Supreme Court of Indiana.

Dec. 16, 1988.

John D. Clouse, Michael C. Keating, Laurie A. Baiden Bumb, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Wendy L. Stone, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Child Molesting, a Class B felony, for which he received a sentence of fifteen (15) years.

The facts are: Ten-year-old T.C. and his three-year-old brother M.C. were playing in a park near their home in Evansville when they saw appellant. T.C. testified that he knew appellant, and they were friends at one time. Appellant told T.C. to go away, so he went over to the sandbox area. From there he watched appellant pull down M.C.'s pants to his knees, then M.C. sat on the top portion of a picnic table. Appellant sat on the bench portion of the picnic table, fondled M.C.'s penis and performed fellatio as M.C. cried. After appellant stopped molesting M.C., T.C. ran over to his brother and pulled up his pants. Appellant told T.C. that he would cut his mother's insides out and cut his father's penis off if he told them about the incident.

T.C. took his brother home and reported the incident to his mother. She testified that she noticed pinch or bite marks on M.C.'s scrotum and that it was very red. She called the police.

Officer Beverly Thompson testified that on August 2, 1986 she knocked on appellant's door and told his parents that she would like to speak with their son. Appellant appeared and before Officer Thompson could state the purpose of her visit, appellant yelled, "Just whose dick was I supposed to have sucked?" He stated that he was not a homosexual. He then called Officer Thompson obscene names. Officer Thompson told appellant's parents that the Detectives Office needed to speak with their son and she left.

Appellant argues the evidence is insufficient to support the verdict. He claims that the discrepancy of the date on which the offense occurred rendered the evidence so incredible that it was beyond belief, and it prohibited him from presenting a viable alibi defense.

The information alleges that appellant committed child molesting on or about July 30, 1986. Appellant filed a notice of alibi for that date. On February 27, 1987, the State filed a notice alleging the offense occurred on August 1, 1986. Also, on February 27, 1987, the State filed a corrective notice which stated that the previous notice erroneously alleged the date of the offense to be August 1, 1986 when in fact the State intended to prove that the offense occurred August 2, 1986.

Appellant filed a notice of intent to prove alibi for both July 30, 1986 and August 2, 1986 and each listed his whereabouts on

those days. Appellant's trial began on May 20, 1987.

At trial, the victim's mother testified that the incident occurred on August 2, 1986, and she filed a report with a police officer that day and took the children to the police station for a statement on the following day. Officer Thompson's police report indicates that she visited appellant's home on August 2, 1986 to ask him questions, but the offense occurred on July 30, 1986 at 5:00 p.m. Officer Thompson testified that the victim's parents told her the offense occurred on July 30, 1986.

Appellant asserts he was misled by the discrepancy of the date on which the offense occurred. He believes that no credible evidence was presented to show that the offense occurred on August 2, 1986, and he was prejudiced by the State's notice alleging the offense occurred on that date because he gave up the opportunity to present alibi evidence as to other possible dates.

■ When the date on which the offense allegedly occurred varies between the information and the State's response to alibi notice, to amount to reversible error the variance must be of such substantial nature that it misleads the accused in preparing and maintaining his defense. *Smith v. State* (1982), Ind., 439 N.E.2d 634; *Quillen v. State* (1979), 271 Ind. 251, 391 N.E.2d 817.

■ In response to the alibi notice, the State fixed the date of the alleged offense as August 2, 1986. Notices so informing appellant were filed February 27, 1987 and again on April 7, 1987. The State presented the victim's mother, who testified that the offense occurred on August 2, 1986.

Appellant presented witnesses who gave exculpatory testimony about his whereabouts on July 30, 1986 and August 2, 1986. Appellant was notified of the August 2, 1986 date well before trial and prepared a defense accordingly. We do not find that appellant was misled in preparing or maintaining his defense. *Id.*

Appellant also argues the evidence was insufficient to sustain his conviction be-

cause the incident could not have occurred on August 2, 1986. Appellant believes the evidence relating to the date of the offense is inherently unbelievable.

■ We recognize that witnesses' testimony as to the date of the offense was conflicting. However, this Court will not reweigh the evidence nor judge the credibility of the witnesses. *Collins v. State* (1988), Ind., 521 N.E.2d 682. A conviction may be sustained on the uncorroborated testimony of a single witness. *Mullins v. State* (1987), Ind., 504 N.E.2d 570. We find the evidence is sufficient to sustain appellant's conviction.

■ Appellant argues the trial court erroneously excluded evidence of prior sexual misconduct committed by the only competent eyewitness, T.C.

By presenting the testimony of C.P. and E.J., appellant offered to prove that while T.C. was sitting near C.P. on a park bench in July of 1986, T.C. said that C.P. had played with his penis, when in fact she did not.

Appellant asserts that evidence of false accusations of similar sexual misconduct is admissible on the issue of T.C.'s credibility. He cites *Little v. State* (1980), Ind.App., 413 N.E.2d 639 and *Hall v. State* (1978), 176 Ind.App. 59, 374 N.E.2d 62 to support his argument

In *Little,* a fourteen-year-old rape victim told police that others had sexually violated her, and she later recanted the accusation. The Court of Appeals stated that generally, a witness may not be impeached by specific acts. However, in sex offense cases in which the victim made a false allegation of conduct similar to that with which the defendant was charged, the victim may be impeached by these specific acts. The court held that evidence of false accusations of similar sexual misconduct is admissible on the issue of the victim's credibility, so long as the allegations are demonstrably false.

Appellant acknowledges that in his case, the person sought to be impeached is a witness and not the victim. He believes, however, that the rule stated in *Little*

should apply to T.C. because the victim was an incompetent witness and T.C. was the only witness who testified that the molestation occurred.

Indiana's Rape Shield Act states that in a prosecution for a sex crime, evidence, opinion evidence, and reputation evidence of the past sexual conduct of the victim or a witness may not be admitted. Ind.Code § 35–37–4–4.

The rule in *Little* stated that the falsity of the victim's accusations must be admitted by him or her or the allegations must be demonstrably false before the victim may be impeached. The rule does not permit the trial to stray from the central issue of guilt or innocence of the defendant into a full-scale investigation of charges made by the prosecutrix against other persons.

In appellant's case, T.C.'s allegedly false accusations were denied by C.P. and her boyfriend, E.J. A determination remained as to whether T.C. did in fact make the accusation and if so, whether it was false, with the outcome relying upon a judgment of the credibility of the witnesses. Such a situation is distinguishable from that in *Little* and *Hall, supra,* in which the victims admitted that the accusations made by them were false.

Because T.C. was a witness and not a victim in appellant's case, and because T.C. did not admit making a false accusation and an issue remained as to whether one existed, we refrain from applying the rule set forth in *Little* to appellant's case. The trial court properly excluded the evidence under Ind.Code § 35–37–4–4.

■ Appellant contends the trial court improperly overruled his objection to the admission into evidence of his two notices of intent to prove an alibi. He concludes that the exhibits were admitted for the purpose of impeaching him, which was improper because he did not testify and no foundation was laid for the impeachment.

The record shows that after appellant's father testified, appellant asked the court to take judicial notice of the information, the notice to defendant filed February 27, 1987, and the second notice filed on the same day. Appellant read these documents to the jury. The State then specified that for purposes of rebuttal, it requested the court to take judicial notice of appellant's notices of intent to prove alibi filed on August 20, 1986 and March 19, 1987. These documents were read to the jury over appellant's objection.

■ Rebuttal evidence is limited to that which tends to explain, contradict, or disprove evidence offered by the adverse party. The scope of rebuttal evidence is a matter for the trial court's discretion. We will not disturb such ruling absent a showing of an abuse of discretion. *Berkley v. State* (1986), Ind., 501 N.E.2d 399.

Appellant's notices of alibi tendered by the State for rebuttal purposes helped to explain the reason for the changed dates on the State's notices. Also, appellant's second alibi contradicts his witnesses' testimony that he was at home all day on August 2, 1986. We find no abuse of trial court discretion in admitting the State's rebuttal evidence.

Appellant argues fundamental error occurred due to the separation of jurors during their deliberations. The record indicates that a juror left the jury room for approximately five minutes before she was returned to the jury room by the bailiff. Appellant asserts he should receive a new trial, or the case should be remanded to the trial court to allow presentation of evidence concerning the effect of the jury separation.

■ Appellant cites *Bales v. State* (1981), 275 Ind. 515, 418 N.E.2d 215 in which we held that barring exigent circumstances, a jury should not be allowed to separate once deliberations have begun. If the jurors were separated, the burden is on the prosecution to remove the suspicion of prejudice to the defendant from the separation. The State must show beyond a reasonable doubt that the separation of jurors did not influence them adversely to defendant or render them less capable of discharging their duty.

■ In *Bales* and other cases on which appellant relies, the jurors were allowed to

separate for a great length of time, such as ten and one-half hours to four days. *Id.; McGaughey v. State* (1981), Ind.App., 419 N.E.2d 184; *Walker v. State* (1980), 274 Ind. 224, 410 N.E.2d 1190.

In appellant's case, the record does not reveal why the juror left the deliberations for five minutes. In *Drake v. State* (1984), Ind., 467 N.E.2d 686, the jury had been allowed to separate and drive a short distance in their own cars. This Court held that the situation is not comparable to that in *Bales* and *Walker* where the jury was allowed to separate for hours or days. Because appellant did not point to any instance in which a juror was in fact exposed to a prejudicial influence nor allege the occurrence of any irregularity from the brief separation, we held he had not raised the question of improper influence on the jury in a manner sufficient for appellate review.

Because the length of separation was extremely brief in appellant's case, we decline to hold that the rule set forth in *Bales* and *Walker* controls appellant's case. Appellant's case more closely parallels *Drake, supra,* and because appellant does not establish how any juror was exposed to a prejudicial influence, we find no need to grant a new trial or remand his case.

Appellant argues the trial court considered improper factors in enhancing his sentence. During sentencing, the trial court recognized appellant's youth as a mitigating circumstance. The court considered as aggravating circumstances appellant's history of antisocial behavior, the fact that the victim was only three years old and is linguistically handicapped which complicated the investigation of the crime, that appellant threatened and intimidated T.C. and attempted to conceal his crime, that his conduct caused serious emotional harm to two children, that he indicated no remorse for his actions, that a suspended sentence would depreciate the seriousness of the crime, and that appellant is in need of correctional treatment provided by commitment to a penal institution.

■■■■ Appellant argues his lack of remorse cannot be an aggravating factor be-

cause he has a right to profess his innocence at all stages of his trial. Appellant's argument has been rejected by this Court. *Brooks v. State* (1986), Ind., 497 N.E.2d 210.

Appellant also argues the trial court should not have considered the victim's age as an aggravating factor because it was also an element of the offense.

■■■■ A fact which comprises a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence. However, the trial court may properly consider the particularized circumstances of the factual elements as aggravating circumstances. *Townsend v. State* (1986), Ind., 498 N.E.2d 1198 (Givan, C.J., and Pivarnik, J., concurring and dissenting).

In appellant's case the trial court noted that the victim was not only a minor, but one of tender age, he was handicapped, and appellant's acts caused the children serious emotional harm. These comments showed particularized individual circumstances which constitute separate aggravating factors.

■■■ Additionally, the enhancement of a presumptive sentence may be sustained by a single aggravating circumstance. *Guenther v. State* (1986), Ind., 501 N.E.2d 1071. We find the trial court articulated sufficient aggravating circumstances to justify appellant's sentence, and it is not manifestly unreasonable in light of the nature of the offense and the character of the offender. *Id.*

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK, J., concur.

DICKSON, J., concurs in result without separate opinion.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

In this case the defense was prepared to present two live witnesses, C.P. and E.J., who were prepared to testify under oath

that T.C. had made a false accusation against C.P. of sexual misconduct. The misconduct attributed to C.P. by T.C. did not involve oral-genital contact, and was therefore different in nature from appellant's alleged criminal acts. Nevertheless, the sexual misconduct of C.P. was said by T.C. to have taken place during the same month as and in the same park as the sexual attack of appellant upon his brother. T.C. was ten years old. As pointed out by the majority opinion, we know that the law countenances a conviction based upon the uncorroborated testimony of a single competent witness. *Lawhorn v. State* (1983), Ind., 452 N.E.2d 915. We also know that it is impermissible in Indiana to give a jury instruction that the testimony of a child must be corroborated or must be given careful scrutiny or cautious examination. *Lewis v. State* (1976), 264 Ind. 288, 342 N.E.2d 859. The rationale of these decisions is based upon existence of a fair opportunity to confront and cross-examine witnesses before the trier of fact. If it be true that T.C. made a false accusation of sexual misconduct against C.P., as defense counsel was prepared to prove, can it be said that the jury fulfilled its duty of judging the credibility of T.C.? I think not.

In this case, the trial judge was undoubtedly faced with a difficult question. The testimony was excluded through application of Indiana's rule against impeachment of witnesses by showing specific acts of misconduct not reduced to conviction, and upon the Rape Shield statute as well. Those are important rules indeed, but in this situation they must give way to the basic right of the accused to cross examine the prosecution's witnesses at a criminal trial. *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347. Alternatively, as a matter of State substantive law, I would apply an exception to these exclusionary rules of evidence when the prosecution's case rests primarily upon the testimony of a single eye witness who admits having made a prior accusation of similar sexual misconduct. The admissibility of such prior accusations was first recognized in *Little v. State* (1980), Ind.App., 413 N.E.2d 639, and *Hall v. State* (1978), 176 Ind.

App. 59, 374 N.E.2d 62. When at trial this situation arises, the credibility of the State's witness emerges as crucial to conviction. Any ensuing mini-trial to be conducted upon the truth or falsity of such prior accusation, restrained in scope by the exercise of discretion by the trial judge, is as I see it, a necessary cost imposed upon the witnesses and the criminal justice system, by the basic right to confront and cross-examine.

The main purpose of the Rape Shield statute is to prevent the harrassment of witnesses, primarily women, who testify in support of a claim of sexual victimization. I see the *Little–Hall* exception as not inconsistent with such purpose. In *Carter v. State* (1983), Ind., 451 N.E.2d 639, we held that the questioning of a prosecutrix in a rape case about whether she had previously charged other persons with sexual misconduct against her, ".. was clearly directed towards the past sexual activity and reputation of the prosecuting witness ..", and was therefore improper under the statute. Here, by contrast, the defense had two, not just one, live witnesses prepared to prove the existence of the prior charges of sexual misconduct and their falsity. It could not be correctly said of a similar question to T.C. in this case, that it was directed towards his past sexual activity rather than his past lies about sexual misconduct in the park, and thus his propensity to exaggerate or falsify about sexual matters.